## ROUNDS and another vs. THE STATE.

*January 16 — January 30, 1883.*

CRIMINAL LAW AND PRACTICE. *(1) Regular jury panel need not be kept full. (3, 4) Challenge of jurors on trial for murder: waiver. (2) Counsel assisting district attorney. (5–8) Statements of accused at examination or inquest, when and how introduced in evidence. (9) Private interview between attorney and witness on the stand. (10) Instructions as to credibility of witnesses, and (11) as to degrees of homicide.*

1. By sec. 2537, R. S., the number of jurors to be summoned under a special venire is left to the discretion of the court, and it is not essential that the regular panel should at all times be kept full.

2. In a criminal action the court overruled an objection by defendants to counsel assisting the district attorney, the latter being present and not objecting to such assistance. *Held*, that such proceedings were equivalent to a request by the district attorney and permission by the court that such counsel assist in the prosecution.

3. On a trial for murder the state and the defendants have the right of alternate challenge of jurors, and such right, if not exercised in full, is not thereby waived or lost. *Schumaker v. State*, 5 Wis., 324.

4. The state having twelve peremptory challenges and the two defendants twenty-four each, the state may challenge one juror and the defendants four, and the state is not bound to challenge until after such four challenges by defendants.

5. Minutes of testimony taken in short-hand by a stenographer on a preliminary examination or on an inquest, and afterwards written out by him, but which were not made by or under the direction of the magistrate nor signed by the witnesses, are not admissible, on a subsequent trial, as records, but are mere memoranda which may be used by the stenographer to refresh his memory.

6. After a defendant on trial for murder had testified that the gun by which the killing was done was discharged by accident, and had rested his case, the state was permitted to give evidence of statements by such defendant at the inquest that he discharged the gun by design. *Held*, that such evidence was properly admitted, (1) as being directly in rebuttal, (2) as being contradictory by way of impeachment, and (3) as original evidence admissible in the discretion of the court.

7. In giving evidence of statements made by a defendant on a preliminary examination, the state is not bound to prove all of his statements so made, but they may be all called out by the defendant on cross examination.

8. Allowing leading questions in the matter of such statements is not error, because in the discretion of the court and because required for the purpose of impeachment by contradiction of witnesses on the trial.

9. To permit the district attorney to hold a private interview with a witness, while on the stand, in regard to what he had already testified, is bad practice, but in the absence of proof that anything was said which affected the testimony of the witness or that the defendants were in any way prejudiced or injured, the judgment will not be reversed therefor.

10. Instructions to the jury that " if any witness is proved to have wilfully sworn falsely in regard to any material facts in the case you are at liberty to disregard her testimony, except so far as it is corroborated by other credible testimony," and that if there was conflict in the testimony of the several witnesses which the jury could not reconcile, it was their duty to disregard such as they deemed unworthy of credit, are *held* to have sufficiently cautioned the jury and to have rendered unnecessary an instruction on that subject asked by defendants and refused by the court.

11. So, also, instructions asked and refused relating to the degrees of criminal homicide are *held* to have been unnecessary, as adding nothing to the statutory definitions which were read by the court.

ERROR to the Circuit Court for *Dunn* County.

Information charging the defendants jointly with the murder of one Frank Garrity, on May 22, 1881. The defendants pleaded not guilty. At the trial L. P. Wetherby appeared as one of the attorneys for the state. The defendants asked leave of the court to inquire of him whether he was employed by the district attorney or by private individuals, but the court refused to grant the request. The defendants then offered to show that Mr. Wetherby was employed by private individuals and not by the state, but the offer was rejected, and the defendants thereupon objected to his appearing in the case as counsel. The objection was overruled and Mr. Wetherby acted as counsel for the state

during the trial and made the closing argument to the jury.

Before proceeding to impanel a jury the regular panel of the term was called, and it appeared that thirty-one jurors only were present, the other five having been excused by the court. A special venire for five jurors to complete the panel was ordered, and five jurymen were summoned from the county by the sheriff and appeared. The defendants challenged the array of jurors included in the special venire on the ground that under the circumstances of the case the court had no authority to issue the same. The challenge was overruled. The impaneling of the jury was then proceeded with, when one Charles Fridley was called into the box and sworn touching his qualifications, and on it appearing that he was one of the special panel of five, the defendants moved the court to strike him for that cause. The court discharged him, thus leaving the panel of thirty-six incomplete. Thereupon the defendants objected to another juror being drawn until the panel was complete. The objection was overruled and the impaneling of the jury proceeded until the whole panel, including the five jurors specially summoned, was exhausted. A special venire for thirty persons to serve as jurors was then issued, and when the persons appeared, the defendants challenged the array on the following grounds: (1) They were not ordered and returned according to law. (2) The original panel not being full, but containing only thirty-one jurors, and a special venire of five jurors having been issued by the clerk to complete the same, and such special venire not having been ordered, drawn and returned in the manner required by law, no other jurors can be ordered, drawn or returned herein except it be to complete the original panel. (3) The panel of jurors in attendance at the commencement of the trial was illegal because it contained but thirty-one jurors, where by law it should have contained thirty-six, and therefore no lawful original panel

of jurors being in attendance, the court possessed no authority to issue the last special venire in question. The challenge was overruled.

After the state had challenged peremptorily seven jurors and had passed the list eight times, one William Beyer, who was not on the panel at the last passing of the list, was called and sworn touching his qualifications. After examination he was peremptorily challenged by the state, and discharged, against the objection of the defendants. A similar peremptory challenge of one J. H. Hill, by the state, after it had peremptorily challenged eight jurors and passed the list twelve times, was sustained by the court.

A stenographer who had taken down the testimony at the preliminary examination, was called as a witness by the state and testified to certain statements made by the defendant *Shea* at such examination. It appeared that a certified transcript in long-hand of the notes of the stenographer was embraced in the record of the proceedings before the justice of the peace on the preliminary examination, and had been sent by the justice to the circuit court, and was used by the witness to refresh his memory. The defendants insisted that the prosecution having put in a part of the statements of the defendant *Shea* were bound to introduce the whole, and requested the court so to direct, but the court refused to do so. The defendants also insisted that the testimony taken on the preliminary examination was matter of record, parol evidence of which was inadmissible, and that the whole record must be introduced, but the objection was overruled. Subsequently, for the purpose of impeaching the credibility of a witness, Wilson, for the prosecution, the defendants offered in evidence her testimony taken at the preliminary examination and contained in the record thereof. An objection to the admission of such testimony was sustained.

As a part of its case in rebuttal the state called as witnesses the justice before whom the inquest was taken, and

also a member of the coroner's jury, and asked them if the defendant *Rounds* did not make a certain statement at the inquest. The testimony at the inquest had been taken down by the stenographer in the same manner as that given on the preliminary examination. The defendants objected to the question on the ground that it was leading, and on the ground that the statement made at the inquest was a matter of record, and could not be shown by parol. The objection was overruled and the question was answered. It appearing that a part only of such statement of *Rounds* had been introduced by the prosecution, the defendants moved that such part be stricken out, and insisted that if a part were put in the prosecution was bound to introduce the whole; but the court overruled the objection.

The defendants, among other things, requested the court to instruct the jury that " the evidence on the part of the state tending to show what *Rounds* stated before the coroner's inquest is not to be received or considered by the jury as evidence against the defendant *Shea*, nor as any evidence tending to show what the facts were attending the homicide, nor as evidence bearing upon the guilt of *Rounds*, but is only to be considered by them as evidence affecting his credibility." The request was refused.

Other facts sufficiently appear from the opinion. The jury returned a verdict of guilty of murder in the second degree against both of the defendants. A motion for a new trial was denied, and the defendants sued out a writ of error.

For the plaintiffs in error there was a brief by *Bailey & Start*, and oral argument by *Mr. Start*. They contended, among other things, that it was error to permit Mr. Wetherby to take part in the trial. R. S., secs. 750, 752, 754; *Meister v. People*, 31 Mich., 99; *Sneed v. People*, 38 id., 251; *People v. Hurst*, 41 Mich., 328; *Comm. v. Williams*, 2 Cush., 582; *Comm. v. Gibbs*, 4 Gray, 146. The statutes in Michigan and

Massachusetts under which the above cases arose are exactly similar to our own.

For the state there was a brief, and oral argument by *H. W. Chynoweth*, Assistant Attorney General. [The brief does not appear upon the files.]

ORTON, J.   The first exception in the record, although not noticed in the brief, is to the jury panel, on the ground that it was not kept full by special *venire*.   The statute (sec. 2537, R. S.) leaves the matter of the number to be summoned to the discretion of the court.

The exceptions noticed in the brief of the learned counsel of the plaintiffs in error will be considered in their order.

*First.*   Hon. L. P. Wetherby, an attorney at law, appeared to assist the district attorney in the prosecution.   The counsel of the plaintiffs in error objected to such assistance, and the court overruled the objection.   This action of the court was tantamount to its permission that Wetherby assist the district attorney, on the trial, and the district attorney being present and at least not objecting, tacitly assented thereto, which was practically equivalent to a request that he should do so.   This practice is sanctioned in principle by the decision of a similar question by this court in *Lawrence v. State,* 50 Wis., 507.   It did not appear, nor was it offered to be shown, that Wetherby had any pecuniary interest in the case, or had been employed for any fee or reward.   This question has been so recently decided by this court that it is unnecessary to refer in this opinion to the many cases cited by the learned assistant attorney general.

*Second.*   The court sustained the peremptory challenge of the two jurors, Beyer and Hill, by the state, against the objection of the plaintiffs in error.   The objection is based upon the assumption that the peremptory challenges of the state had been already exhausted.   By the rule admitted to be

correct by the learned counsel of the plaintiffs in error, and sanctioned by the case of *Schumaker v. State*, 5 Wis., 324, the state and the defendants have the right of alternate challenge, and if it is not exercised in full, it is not thereby waived or lost. In this case the two defendants had each twenty-four challenges, making in all forty-eight. According to this rule the state could challenge one juror and the two defendants four, and the state was not bound to challenge until after such four challenges by the defendants. This being so, the state had not lost their right to challenge these two jurors, as two of its twelve challenges allowed by law. Sec. 4701, R. S., has no application to this rule, being confined to challenges *for cause*.

The third, fourth, sixth, seventh, eighth, and ninth exceptions may be disposed of together. They all depend generally upon the question whether the statements or testimony of the defendant *Shea*, and of the witness Wilson, taken down in short-hand by a stenographer at the time of the examination before the magistrate, and the statement or testimony of the defendant *Rounds*, taken down in the same way by a stenographer at the time of the examination before the coroner's jury, and afterwards written out at length by him, must be introduced as records to show what such statement or testimony was, as admissions or otherwise, instead of oral evidence by the stenographer or others as to what statements they made or what testimony they gave on such examination. The court ruled, against the objection of the defendants, that such testimony and statements so taken down by the stenographer could not be introduced or received in evidence as records, or as the testimony of these several persons reduced to writing by the magistrate on these examinations, but that such statements and testimony might be proved by oral evidence, and so they were proved as the admissions of the defendant *Shea*, and as the statements of the witness Wilson, to contradict her evidence on the trial,

and as the admissions of the defendant *Rounds*, as evidence against him, or in rebuttal or contradiction of his testimony on the trial.

Whatever the rule may be as to the right of proving by oral testimony what the party or witness stated on oath on such examination in case the magistrate had reduced to writing such statements and made them records under the statute, it is very clear that neither of these written out statements or minutes of the evidence found among the papers in the case come within such rule. These minutes of the testimony made by the stenographer were mere fugitive papers, and no part of the record. (1) They were not "reduced to writing by the magistrate or under his direction," or "signed by the witnesses," as required by sec. 4790, R. S., on preliminary examinations, or "reduced to writing by the justice of the peace or some other person by his direction," or "subscribed by the witnesses," as required by sec. 4872, on inquests. It does not appear that these minutes were made even in short-hand under or by the direction of the magistrate, or signed by the witnesses, or that they were in any way adopted or authenticated by him. If sought to be introduced in evidence they would be mere hearsay testimony, and that given in an improper manner. They may be correct or incorrect, so far as any official or record sanction is concerned. If they had been allowed to be introduced against the objection of the defendants, it would have been clearly erroneous, and the judgment for that reason would have been reversed. They were proper as *memoranda* made at the time by the stenographer, and might have been referred to by him to refresh his memory, but could not be read as evidence. This disposes of all these exceptions, only it is claimed by the learned counsel for the plaintiffs in error that as to the ninth exception such oral evidence to prove the statements of the defendant *Rounds* before the jury of inquest was improper after the defendants had rested their

case, as going into an examination in chief to support the information; as to the eighth exception, that the whole of the statements of the defendants should have been proved by the state, if any; and as to the seventh exception, that the counsel for the state were allowed to ask leading questions as to the statements of the defendants.

1 This evidence as to the defendant *Rounds* was given after he had testified in his own behalf that he discharged the gun by *accident*, and this statement showed that he had admitted on such examination that it was done by *design*. It was therefore proper for three reasons: (1) that it was directly in rebuttal; (2) that it was contradictory by way of impeachment; and (3) as original evidence admitted in the discretion of the court. As to the last reason see *Campbell v. Moore*, 3 Wis., 767; *Comm. v. Dam*, 107 Mass., 210; *Comm. v. Moulton*, 4 Gray, 39.

2. It was not error in refusing to require the state to prove all the statements of the defendants, if any. It was the right of the defendants to have introduced in evidence all of the statements, or to have called them out on cross examination, which they failed to do, and therefore cannot complain.

3. Allowing leading questions in this matter of the statements or admissions of the defendants was not error, (1) because it was in the discretion of the court; and (2) it is required, for the purpose of impeachment by contradiction of witnesses on the trial, that leading and direct questions be asked. *Ketchingman v. State*, 6 Wis., 426.

*Fifth exception.* The district attorney was allowed by the court, against the objection of the defendants, to hold a private interview with the witness Hodgins, while on the stand, in regard to what he had already testified in the case, in a tone not heard by the defendants' counsel or by the court. This was certainly very bad practice, and ought never to be repeated, and must have been somewhat thoughtless in the learned judge, usually so considerate in the trial of causes.

But, however improper and unbecoming, we cannot say, upon this record, that anything was said by the district attorney to the witness that affected his testimony in any way, or that the defendants were in any respect prejudiced or injured by this private interview. The defendants had the right to have examined the witness, as well as the district attorney, as to the matter of the interview, and had the same disclosed to the court and jury, but failed to exercise it. We cannot assume that anything improper was said to the witness, or that would prejudice the defendants, and therefore cannot reverse the judgment on that ground, but we wish to emphatically condemn the practice when the interview relates to the evidence in the case.

The other exceptions relate to the instructions of the court to the jury and instructions asked. It seems that all of the twenty-one instructions asked by the learned counsel of the plaintiffs in error were given, except five. The first instruction asked was as follows: " If the jury find that the witness Wilson has wilfully testified falsely upon any material point, and the questions on her relations to the deceased and her condition as to whether she was under the influence of intoxicating liquors at the time of the homicide are material questions as bearing upon the weight to be given to her testimony, they will be justified in entirely disregarding her testimony, and in any view her testimony, in the position in which the testimony places her, should be received and weighed with great caution." The court did charge the jury, "if any witness is proved to have wilfully sworn falsely in regard to any material fact in the case, you are at liberty to disregard her testimony, except so far as it is corroborated by other credible testimony." The last part of the instruction asked was improper, as deciding in place of the jury the position in which the testimony had placed the witness; but we think the court laid down the rule substantially as asked, and full as strongly as the authorities sanc-

tion. The material fact in respect to which the witness has sworn wilfully false should be some fact on which the case depended, or, as said in Whart. Crim. Ev., § 380, "that goes to the *core* of the witness's testimony," in order to warrant the jury in disbelieving *all* of his testimony. The clause in the instruction, "except so far as corroborated by other credible testimony," must mean, if it means anything, that the jury might disbelieve the witness's evidence, as to all the facts she testified to, unless such facts are established by other credible testimony, and that they should not receive the facts as proved because she testified to them, but because they are established by other credible evidence. In this meaning the exception does not even qualify the rule, and might have been as well omitted, but giving it did no harm. The court instructed the jury that "if there was conflict in the testimony of the several witnesses which they could not reconcile, it was their duty to disregard such as they deemed unworthy of credit." We think this, with the other instruction, sufficiently cautioned the jury.

The other instructions asked relate to the degrees of criminal homicide as found in the statute. As a rule, the reading of the statute defining any degree which the jury would be justified by the evidence to find, is sufficient. Explanations of the statute in different language generally confuse both the subject and the jury. The court read to the jury the statutory definitions of murder in the first and second degree, and manslaughter in all the degrees to which the testimony was possibly applicable, and gave a short, but we think, on the whole, a correct, exposition of the law. The instructions asked were at least questionable, and at most, if correct, added nothing to the statutory definitions, which were made purposely to be understood by the jury as well as the court. We find no error in refusing the instructions not given, or in the instructions given, by the court, and copying them into this opinion is needless.

On the general merits of the case,. on the evidence, we think the verdict against both of the defendants was warranted by the testimony, even conceding that the testimony of the witness Lizzie Wilson, as to what the defendant *Shea* said at the time of the shooting, was untrue. We think there was other evidence sufficient to connect the defendants together, both in the intent and execution of the fatal act.

*By the Court.*— The judgment of the circuit court is affirmed.