STATE, Respondent, vs. ZUEHLKE, Appellant.

*October 10—November 4, 1941.*

*Wendell McHenry* of Waupaca, for the appellant.

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *J. Kyle Anderson,* district attorney of Waupaca county, and oral argument by *Mr. Anderson* and *Mr. Platz.*

FAIRCHILD, J.  The evidence sustains the conviction.  The ruling upon the motion for a change of venue must be sustained.  There was a strong showing on the part of the state that public sentiment in the county was such that a fair trial of the defendant could be had.  No sufficient showing of excitement or prejudice that would interfere with defendant's rights was made.  The affidavits in opposition to the motion which were filed by the state answered the objections raised by the defendant.  The correctness of the conclusion of the trial judge in that respect was demonstrated by the fact that no difficulty was encountered in securing a fair and unbiased jury.  *Krueger v. State,* 171 Wis. 566, 576, 177 N. W. 917; *State v. Smith,* 201 Wis. 8, 10, 229 N. W. 51; *Schroeder v. State,* 222 Wis. 251, 254, 267 N. W. 899.

Testimony of witnesses who identified appellant and the circumstantial evidence presented at the trial shows a carefully arranged plan on his part to do the very thing he has been convicted of doing.  While appellant pleaded not guilty, no evidence was offered on his behalf which would in any way explain his conduct or modify the effect of his presence at the scene of the crime, his purchasing of material calculated to cause the conflagration, and his carrying it into the house which he proposed to burn.  His mismanagement of the material to be used in setting fire to the house resulted in an explosion and an alarm ahead of the time he had planned to have the fire occur.  He sustained injuries as the result of the explosion.  His face was burned and his hair was singed.  The excitement resulting from this unexpected disturbance of his plans caused him to leave his glasses and glasses case behind.  The latter contained an address which at once directed suspicion toward the appellant.  His arrest at Washington, D. C., followed in a few days and the particles of evidence discovered by the fire marshal and police began to fit themselves together so perfectly that no reasonable doubt

as to appellant's guilt can exist after a review of the evidence. For some time before the attempt he had been planning the burning of the house and the destruction of his personal property which was in it. Some of the evidence to the admission of which appellant objected consisted of memoranda made by him of experiments as to the length of time a candle would burn and of details of the plan which he had in mind. Alleged errors claimed to have been committed in securing his conviction are chiefly based on the general proposition that the trial court erred in admitting in evidence papers, documents, articles of clothing, and other personal property because obtained by an unlawful search and seizure, and contrary to appellant's constitutional rights under the Fourth and Fifth amendments to the United States constitution and secs. 8 and 11, art. I, of the Wisconsin constitution. Appellant moved for the suppression of the evidence and the return of the property to him at the beginning of the trial. In disposing of this motion the trial court took the evidence offered by each party and upon consideration concluded "that the defendant consented to the search and seizure prior to the time that the articles were taken," and denied the motion to suppress. This ruling would have to be upheld if the objection were good and were it necessary under the circumstances to have appellant's consent. But in view of the manner in which the papers found in the agricultural department in Washington were acquired by the police and the nature of the articles such as the coat and hat worn by appellant in traveling to and from Fremont, the validity of the objection does not exist. Evidence taken from defendant's apartment lacked much in persuasive power and was apparently so considered by appellant. It consisted of a leather jacket, maps, and bus, railroad, and air-line schedules. The record shows that the jacket was returned to appellant without being used as evidence, and that when the timetables were offered in evidence defendant's counsel said there was no objection.

The next articles offered in evidence to which appellant objects were taken from his desk in a department of agriculture building where defendant worked. His desk was property over which he could not exercise private control. This was not his castle nor was the possession of those papers at the time of their taking in any way connected with his person. The papers consisted of the memoranda referred to and an auger which had been secured for the apparent purpose of replacing one appellant had lost at the time of the explosion in the house in Fremont. There is nothing in the procedure by which the officers reduced these memoranda to possession which amounts to an unlawful search. They asked permission of appellant's superior before searching the desk and did so only after receiving proper permission. The fact that they were papers did not invest them with any special sanctity to exempt them from search and seizure. He had no special property or possessory rights in the desk he was using and in no sense of these particular guarantees of the constitution could his rights be said to be invaded. *United States v. Kaplan* (D. C.), 286 Fed. 963, 969. At the particular time they were taken these articles were no more in his possession than if he had handed them to a stranger as he fled from the scene of the crime. Had the keys which he attempted to throw out of the bus window actually been disposed of and later found, they certainly could have been used in evidence for such bearing as they might have on the question of his guilt.

The protection against unlawful search and seizure provided by those clauses in the federal and state constitutions was the result of a reaction to the high-handed injustice of permitting punishment to be inflicted on persons suspected of crime in order to compel them to admit their guilt. The situation presented here is far removed from those which the unreasonable search and seizure provisions were designed to cover. Since the evidence here was obtained by means not

amounting to a violation of his constitutional rights his motion to suppress the evidence and prevent its use upon the trial was rightly denied.

"A party is privileged from producing the evidence but not from its production," said Mr. Justice HOLMES in *Johnson v. United States,* 228 U. S. 457, 458, 33 Sup. Ct. 572, 57 L. Ed. 919, and this court held in *Voluntary Assignment of H. M. Warner & Co.* 203 Wis. 65, 68, 233 N. W. 631, that "the rights of one who by force of circumstances in response to impulse or dictates of conscience, by accident or inadvertence, places in the keeping of an assignee . . . or other person, incriminating evidence, are not violated by compelling the . . . person in possession, to produce such evidence in criminal proceedings."

When the appellant was placed under arrest in the department of agriculture building he told the officers that he had not worn a coat or hat as he lived near where he worked. The coat and hat which were later taken into possession by the officers and offered in evidence were left hanging in that office. He had abandoned them and can now claim no unlawful seizure of them. *Schenck ex rel. Chow Fook Hong v. Ward* (D. C.), 24 Fed. Supp. 776. The coat was of a reversible type. It had a tan side and a dark side. The defendant in his trip to Fremont wore this coat one time with the tan side exposed and at another time with the dark side out. Not only did he make this effort to obscure his identity but it appears that he at times wore a false moustache. The point of objecting to the use of the hat and coat of course was to keep out of the evidence a link in the chain of circumstances leading to his identification. But such portions of a person or attire as are customarily open to observation are legitimate sources from which witnesses may give testimony of the result of such observation. In *Thornton v. State,* 117 Wis. 338, 347, 93 N. W. 1107, where a defendant's shoes were taken and fitted into tracks at the place where an as-

sault had occurred, Mr. Justice DODGE, speaking for the court, said:

"Within this rule it would have been entirely competent for the sheriff or any one else to have noticed the shoes of the plaintiff in error, and to have testified, so far as he was able, to a comparison between them and the footprints near the place of assault. . . . We are satisfied that the *required* surrender of defendant's shoe did not constitute any unreasonable search or seizure, and that the form and outline of one's shoe are not so naturally secret that the enforcing opportunity to observe them requires of the accused a disclosure of a fact which he has any right to withhold, so as to constitute any infringement of the constitutional command that he be not compelled to be a witness against himself."

This doctrine finds support in *Rogers v. State*, 180 Wis. 568, 193 N. W. 612, where the accused was required to put on certain clothes and a cap and sit in an automobile to enable a witness to determine whether or not he could positively identify the accused.

We find no error in admitting the testimony of the fire marshal as to statements made to him by the appellant. It appears that the fire marshal advised appellant to plead guilty, saying that it might result to his advantage because of the saving of expense incident to a trial. It was then testified that appellant said in substance that he would plead guilty but for the effect it would have on his mother. He knew that he was accused of the crime and yet he did not deny it. He had already asked the district attorney if he would recommend probation if he pleaded guilty. The conversation falls within the rule where the statements of fact of his guilt and his failure to deny are admissible as evidence of his acquiescence to the truth of the accusation. *McDonald v. State*, 193 Wis. 204, 212 N. W. 635; *Collins v. State*, 115 Wis. 596, 92 N. W. 266; 2 Wharton, Crim. Ev. (11th ed.) p. 1089, § 656.

Counsel for appellant calls attention to the fact that at the time the jury was selected there were only thirty-three jurors

on the panel instead of the thirty-six required by statute. It was within the discretion of the trial judge to determine the necessity of drawing additional names. *Rounds v. State,* 57 Wis. 45, 50, 14 N. W. 865; *Emery v. State,* 101 Wis. 627, 644, 78 N. W. 145.

Error is also assigned as to the instructions to the jury. We find no prejudicial error. With respect to the refusal to grant a new trial because of the failure of the state to prove ownership of the property as alleged in the information, it is considered sufficient to say that there was evidence to sustain the findings that the ownership of the property was proved as alleged and it is sufficient to support the conviction. We agree with the learned assistant attorney general that the evidence of appellant's guilt is overwhelming.

*By the Court.*—Judgment affirmed.