No. 48,339

STATE OF KANSAS, *Appellant*, v. ERSEL F. GORDON, *Appellee*.

(559 P. 2d 312)

Opinion filed January 7, 1977.

*Kiehl Rathbun,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Margaret W. Jordan,* district attorney, and *William P. Coates, Jr.,* assistant district attorney, were on the brief for the appellant.

*David J. Waxse,* of Payne and Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an interlocutory appeal by the state from an order suppressing evidence obtained under search warrants.

The state charged defendant Ersel F. Gordon with sixteen counts of felonious theft and two counts of forgery. The investigation which led to these charges involved issuance of two search warrants which, with the resulting searches, are the focus of this appeal.

The parties stipulated to the facts at the hearing of the defendant's motion to suppress. At the time of the alleged crimes defendant Gordon was administrator of a local retirement housing project known as "Lakeview Village", operated by Evangelical Village and Bible Conference, Inc., which was the victim of the alleged crimes. The village, located on approximately seventy-five acres in Lenexa, Kansas, encompassed a highrise building, with the address 9100 Park Avenue, Lenexa, Kansas, which contained 189 apartments, twenty-four four-plex living units, lounges, dining rooms, shops of various kinds, storage areas for tenants and business offices. Each resident of Lakeview Village had a lifetime right of occupancy of certain quarters. Each occupant of a garden apartment had an individual mailing address. Approximately 189 persons resided in Lakeview Village in October, 1974, of which about 159 shared the 9100 Park Avenue address. As administrator defendant Gordon was responsible to the board of directors of Evangelical Village and Bible Conference, Inc., for all the Village's operations and property.

The administrative offices consisted of two adjoining rooms, one a large office containing secretarial and sale personnel desks with no private offices, designated by the parties as office A, and the second, designated office B, a slightly smaller room which contained a conference table and defendant's private desk, credenza and file cabinet. During October, 1974, there was normally no restriction during business hours on ingress and egress between the two rooms as to administrative employees at the village. Both

rooms were customarily locked except during business hours. As administrator defendant Gordon used office B as his office and kept therein certain property and documents not related to the operation of Lakeview Village.

On October 25, 1974, Johnson county law enforcement officers obtained the first of the search warrants in question. It directed seizure of "All records pertaining to Lakeview Village Checking Accounts and records and books of account and business of Lakeview Village". The locations to be searched were stated to be in Johnson county, Kansas, as follows: "Lenexa State Bank; Lakeview Village, 9100 Park Avenue., Lenexa, Kansas; and Southgate State Bank, Prairie Village, Kansas."

Upon arrival at Lakeview Village the officers proceeded directly to the administrative offices in the highrise building. They entered or searched no other rooms, areas or residences. In the offices they obtained certain items of personal property listed on the return to the warrant. After a discussion with the attorney for Lakeview Village the officers returned to the magistrate court and obtained an additional search warrant. This warrant was identical to the first except that it contained an additional directive to seize "personal papers and property of Ersel F. Gordon". The officers then returned to Lakeview Village and seized personal property as shown in the return of the second warrant. The seized items were taken from office A, office B and a records storage area in the basement of the highrise building. We are told the seizure included a bank book, tape recording and personal items taken from defendant's desk, credenza and file cabinet.

The trial court ruled that defendant Gordon had standing to challenge the searches and seizures and that they were unlawful because the warrants authorizing them were facially invalid for overbroadness as to the area to be searched inasmuch as a multiple occupancy structure was involved.

We consider first the standing issue as it relates to office A and the basement storage area. The state concedes in its brief and in oral argument that defendant does have standing to challenge the search of his private desk, credenza and file cabinet located in office B and we need not be further concerned with the standing issue as to items taken from them. The stipulation of facts does refer to these depositories as defendant's private desk, credenza and file cabinet and it states that in office B he maintained certain property and documents not related to the operations and property

of Lakeview Village. (The state says a written record was made by the officers at the time of the search as to the exact location from which each seized article was taken.)

The fourth amendment to the federal constitution and section 15 of the Kansas bill of rights secure the people against unreasonable searches and seizures of their property. These guaranties protect an aggrieved person's property, not property in which he neither has nor claims any ownership or interest. To protect this interest one must have standing to object to the use of evidence in a criminal proceeding against him on the ground of an illegal search and seizure (*State v. Boster*, 217 Kan. 618, 539 P. 2d 294). In *State v. Sumner*, 210 Kan. 802, 504 P. 2d 239, we recognized three bases for obtaining standing to challenge a search warrant: (1) Ownership or possessory interest in the property seized; (2) ownership or possessory interest in the premises searched; or (3) reasonable expectation of freedom from governmental intrusion on the premises.

Defendant Gordon asserts he has the necessary standing under precedent stated in *Mancusi v. DeForte*, 392 U. S. 364, 20 L. ed. 2d 1154, 88 S. Ct. 2120. There DeForte, a vice-president of a local union, was indicted on charges of conspiracy, coercion and extortion in that he had misused his union office to "organize" owners of juke boxes and compel them to pay tribute. The union had refused to comply with a subpoena duces tecum whereupon law enforcement officers, without a search warrant, conducted a search of the union's office and seized papers from an office shared by DeForte and other union officials. DeForte did not claim that the office was reserved for his personal use but he did have custody of the papers at the moment of their seizure. In discussing whether DeForte had fourth amendment standing, the court first recognized that since the papers seized did not belong to DeForte he could have personal standing only if, as to him, the search violated the "right of the people to be secure in their . . . houses. . . ." The word "houses" is not to be taken literally, the court explained, and the constitutional protection may extend to commercial establishments (392 U. S. at 367). The court continued:

"Furthermore, the Amendment does not shield only those who have title to the searched premises. It was settled even before our decision in *Jones v. United States*, 362 U. S. 257, that one with a possessory interest in the premises might have standing. See, *e. g., United States v. Jeffers*, 342 U. S. 48. In *Jones*, even that requirement was loosened, and we held that 'anyone

legitimately on premises where a search occurs may challenge its legality . . . when its fruits are proposed to be used against him.' 362 U. S., at 267. The Court's recent decision in *Katz v. United States*, 389 U. S. 347, also makes it clear that capacity to claim the protection of the Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion. See 389 U. S., at 352. The crucial issue, therefore, is whether, in light of all the circumstances, DeForte's office was such a place." (pp. 367-368.)

The court held that DeForte had standing to object to the seizure, saying:

". . . it seems clear that if DeForte had occupied a 'private' office in the union headquarters, and union records had been seized from a desk or a filing cabinet in that office, he would have standing. . . . In such a 'private' office, DeForte would have been entitled to expect that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission or that of his union superiors. It seems to us that the situation was not fundamentally changed because DeForte shared an office with other union officers. DeForte still could reasonably have expected that only those persons and their personal or business guests would enter the office, and that records would not be touched except with their permission or that of union higher-ups. This expectation was inevitably defeated by the entrance of state officials, their conduct of a general search, and their removal of records which were in DeForte's custody. It is, of course, irrelevant that the Union or some of its officials might validly have consented to a search of the area where the records were kept, regardless of DeForte's wishes, for it is not claimed that any such consent was given, either expressly or by implication." (pp. 369-370.)

We think defendant Gordon's reliance upon *Mancusi* is misplaced insofar as the seizure of records from office A and the storage area is concerned. There the owner or proprietor of the premises, the union, did not consent to the search. It was not the victim of the crimes being investigated and in fact it objected to surrender of the papers. Here the proprietor of the property, Lakeview Village, the victim of the crimes for which evidence was being gathered, initiated the search. The areas which were searched were its own property and included nothing reserved for defendant's exclusive use. Its attorney gave directions for the search. Defendant Gordon was neither an officer nor shareholder of the corporation as was the case in authority relied upon by him (*e. g., Henzel v. United States*, 296 F. 2d 650, in which defendant was the organizer, sole stockholder and president of the corporation and *United States v. Morton Provision Company*, 294 F. Supp. 385, where defendants were officers of corporations which were essentially one or two man operations). His status was that of an em-

ployee of the corporation. As against him his employer could have preempted its own property and his privacy would not have been invaded. Under these circumstances there simply was no expectation of freedom from intrusion instigated and directed by that employer and no standing to object to search and seizure existed. Our holding is that as to records removed from office A and the basement storage area defendant Gordon had no standing to object on the basis of illegal search or seizure and that part of the judgment must be reversed.

We turn now to the issue of overbreadth in the description of the area to be searched, with reference to the search and seizure of items from defendant's private desk, credenza and file cabinet. Both warrants directed a search of three locations: Lenexa State Bank; Lakeview Village, 9100 Park Avenue, Lenexa, Kansas; and Southgate State Bank, Prairie Village, Kansas. Defendant's contention of invalidity is two-fold: First, the warrants direct the officers to three different locations owned and occupied by separate persons, and second, Lakeview Village is a multiple occupancy structure and the warrants failed to specify the subunit or area to be searched. Both contentions have merit.

It is constitutionally required that a search warrant shall "particularly" describe the place to be searched. Thus general or blanket warrants which give the executing officers a roving commission to search where they choose are forbidden. The general rule respecting multiple locations is stated in 68 Am. Jur. 2d, Searches and Seizures, § 78, as follows:

"The very purpose of the constitutional requirement of particularity in describing the place to be searched, to wit, the prohibition of general warrants, leads to the conclusion that a warrant may not ordinarily authorize the search of multiple premises owned or occupied by different persons." (p. 732).

There are no facts present in the instant case which appear to justify departure from the foregoing rules. Of greater significance is the fact that one of the places to be and which was searched under that warrant was a highrise multiple occupancy structure occupied by a number of persons and the location was described simply as 9100 Park Avenue, Lenexa, Kansas. No subunit or specific designation or location within the structure was given. The only direction was an address used in common by at least 159 residents of Lakeview Village and for several shops as well. In an annotation at 11 ALR 3d 1330, Search Warrant—Apartment or Room, this statement appears:

". . . Where the area under suspicion is located in a structure divided into more than one occupancy unit such as a hotel, apartment house, or similar multiunit dwelling, the question is presented whether the description set forth in the warrant is sufficient to comply with the constitutional requirement. . . . the courts are agreed that a warrant is invalid if it contains no description of the subunit to be searched but refers merely to the larger multiple-occupancy structure. The insufficiency of such a warrant has been recognized in a number of cases where the premises were described merely by the street or municipal number assigned the larger structure and used in common to designate all the occupancy units therein contained." (p. 1332.)

The foregoing principle has been applied to commercial buildings (see e. g., *In re Calandra*, 332 F. Supp. 737, affirmed *sub nom United States v. Calandra*, 465 F. 2d 1218, reversed on other grounds, 414 U. S. 338, 38 L. ed. 2d 561, 94 S. Ct. 613). Thus a search warrant directed against a multiple occupancy structure generally will be held invalid if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units (see cases cited at 68 Am. Jur. 2d, Searches and Seizures, § 77, note 39). Here again a few courts have declared exceptions to this rule but none of them, even if recognized, is applicable under the facts in this case. (These exceptions include those summarized in *Perez v. State*, 249 Ark. 1111, 463 S. W. 2d 394: [1] Where the warrant adequately identifies the subunit by naming the occupant; [2] where the description of the subunit is sufficient to enable the executing officer to locate the premises with reasonable certainty, in spite of a slight omission or inaccuracy; [3] where the deficiency in the warrant may be cured by a proper description in the supporting affidavit, although it is usually required that the affidavit be annexed or attached to the warrant; see also Anno: 11 ALR 3d 1330, supra, III Exceptions and Qualifications, §§ 5-10, pp. 1340-1347.)

Here the search warrants were general in their terms in that they did not describe the particular area in a large multiple occupancy structure which was to be searched. The only description given was common to many subunits in the building. The effect was to leave the area to be searched to the discretion or option of the executing officers. This is constitutionally forbidden and the trial court correctly ruled as to the items taken from defendant's private desk, credenza and file cabinet.

Accordingly as to items taken from office A and the basement storage area the judgment is reversed. As to items taken from defendant's personal desk, credenza and file cabinet in office B

it is affirmed. The cause is remanded to the trial court for further proceedings in harmony with this opinion.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting:

While concurring with that portion of the court's opinion regarding the search of "Room A" in the administrative offices of Lakeview Village, Inc., I fail to see why a different rule should be applied to *the area of the administrative offices designated as "Room B" in the stipulations of the parties.*

Here we have what may be described as an embezzlement (felonious theft under our new criminal code) of approximately $100,000 by an employee (the administrator) of Lakeview Village, a corporation. The record discloses, and the court concedes, the proprietor of the property, Lakeview Village, the victim of the crimes for which evidence was being gathered, initiated the search. From this it must be presumed the employer consented to the search. Under these circumstances with respect to "Room A" in the administrative offices of Lakeview Village, the court says:

". . . His status was that of an employee of the corporation. As against him his employer could have preempted its own property and his privacy would not have been invaded. Under these circumstances there simply was no expectation of freedom from intrusion instigated and directed by that employer and no standing to object to search and seizure existed. . . ."

The court then proceeds upon what I consider to be a false premise in analyzing the search and seizure of evidence from "Room B." In the opinion the court says:

". . . The state concedes in its brief and in oral argument that defendant does have standing to challenge the search of his private desk, credenza and file cabinet located in office B. . . ."

Throughout the state's application for an interlocutory appeal it contends the defendant does not have standing to challenge the search of Lenexa State Bank, Southgate State Bank, or Lakeview Village; that with respect to the search of Lakeview Village Corporation, the defendant is without standing to contest the search of the corporate premises. The state then recites in its application:

". . . However, the defendant clearly has standing to challenge the search and seizure of *his personal papers and property* as he has a possessory interest in them under the authority of [*State v.*] *Sumner*, [210 Kan. 802, 504 P. 2d 239]." (Emphasis added.)

In *State v. Sumner*, 210 Kan. 802, 504 P. 2d 239 (to which the state makes reference above), the court said:

"This court has previously considered the question of standing to object to the infringement of the constitutional right to be secure in one's person, house, papers, and effects against unreasonable searches and seizures. It has been held it is proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed, that he establish that he himself was the victim of an invasion of privacy. To establish 'standing' this court has required the movant claim either to have owned or possessed the seized property, or to have had a possessory or proprietary interest in the premises searched. (*State v. Edwards,* 197 Kan. 146, 415 P. 2d 231; *Wheeler v. State,* 202 Kan. 134, 446 P. 2d 777; *State v. Grimmett & Smith,* 208 Kan. 324, 491 P. 2d 549; *State v. Williamson,* 210 Kan. 501, 502 P. 2d 777; *State v. Masqua,* 210 Kan. 419, 502 P. 2d 728.)

"The state has the burden of proving that a search and seizure is lawful (K. S. A. 1971 Supp. 22-3216[2]), however, under the statute, the movant must allege he was in fact *aggrieved* by the search and that his constitutional right to be secure in *his* property has been violated. In short, the movant is required by 22-3216 (2) to allege facts showing wherein the search and seizure was unlawful and establish he personally was aggrieved by the alleged illegal search and that his rights were prejudiced thereby." (pp. 803-804.)

On this precise point the state argues in its brief:

"As reflected in the record on appeal, the issue of standing, along with the search and seizure issues, was submitted to the district court upon an agreed and stipulated statement of facts. There was no stipulation, however, that defendant/appellee had either a proprietary or possessory interest in the items seized or that he was 'a person aggrieved' by the search of Lakeview Village, both as required by *Sumner, supra,* and *Boster* [*State v. Boster,* 217 Kan. 618, 539 P. 2d 294]. Indeed, the record is devoid of any evidence which would refute this statement. Despite the absence of such a stipulation, the trial court found that the defendant/appellee did have standing. Long ago, this court held:

" 'Where the parties to an action pending in the district court submit the case to the court for decision and judgment upon an agreed statement of facts, it is error for the court to make findings of its own, differing from the agreed statement of facts, and then to render judgment upon its own findings.' *Brown v. Evans, Adm'r,* 15 Kan. 88, Syl. 1 (1875).

Also see *City of Wichita v. Boles,* 156 Kan. 619, 621, 135 P. 2d 542 (1943).

"At the court hearing on defendant/appellee's motions, other matters were brought before the court. At that occasion, the defendant/appellee went outside the stipulated statement of facts and submitted to the trial judge, sitting as the trier of fact, what purported to be his personal affidavit. That document was presumably tendered to the court as defendant/appellee's self-serving statement that would 'establish' him as the victim of an invasion of privacy, so that he could then claim standing.

"To the above procedure, the State of Kansas strenuously made timely and specific objection. Despite the plaintiff/appellant's objection, the trial court considered that purported affidavit as evidence and employed it in reaching its conclusion of law that the defendant/appellee had standing to challenge the searches."

The foregoing, in my opinion, conclusively establishes that the state does not concede the defendant has standing to challenge the search and seizure of evidence from "Room B."

If the foregoing and other statements in the state's brief can be construed as an admission that the defendant has standing to challenge the search and seizure of evidence from the defendant's private desk, credenza and file cabinet in "Room B," this court is not bound by such admission. The Supreme Court is not bound by an erroneous stipulation of law. (*State v. Gregory*, 218 Kan. 180, 187, 542 P. 2d 1051; *Urban Renewal Agency v. Reed*, 211 Kan. 705, Syl. 4, 508 P. 2d 1227; *In re Estate of Maguire*, 204 Kan. 686, Syl. 5, 466 P. 2d 358; and *Beams v. Werth*, 200 Kan. 532, Syl. 10, 438 P. 2d 957.) Otherwise, an erroneous concept of the law espoused by one or more of the parties would bind the court to adopt an erroneous precedent.

Insofar as material to a discussion herein the journal entry of the trial court recites that it made the following findings of fact:

"1. That *the stipulations* of the parties numbered one through fourteen and the exhibits attached thereto *are* incorporated herein by reference and *made the findings of this Court.*

"2. The second search warrant issued on October 25, 1974, directs the officers to seize the personal papers and property of the defendant.

"3. The defendant *claims* a possessory interest in the materials seized.

"4. The defendant being the administrator of Lakeview Village, he *claims* that his office as administrator and the papers contained therein would not be subjected to governmental intrusion.

"5. The three locations which are authorized to be searched by the warrants in question are separate and distinct business premises which were not occupied or owned by the same persons." (Emphasis added.)

On the foregoing findings the trial court concluded on the issue of "standing" as follows:

"1. Before the question of the validity of the warrant in question can be reached, it must be determined whether the defendant has standing to assert objections to the warrant purportedly justifying the search and seizure.

"2. This question arises because the search involved neither defendant's person nor an area over which he had exclusive control at all times, but rather the offices of a company by which he was employed.

"3. In order to qualify as a person aggrieved by a search and seizure, one must be the victim of an unlawful search and seizure, or, in other words, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. *Jones v. United States*, 362 U. S. 257 at 261 (1960).

"4. To establish 'standing' the courts have required the movant claim

either to have owned or possessed the seized property or to have a possessory interest in the premises searched. *Jones v. United States,* supra.

"5. Movants may also establish 'standing' by showing that the area searched was one in which there was a reasonable expectation of freedom from governmental intrusion. *Mancusi v. DeForte,* 392 U. S. 364 (1968).

"6. In the present case, all of these elements are present in that the defendant was the person at whom the search was directed, he has a possessory interest in all of the items seized and an ownership interest in some of the items seized, and he had a reasonable expectation of freedom from governmental intrusion and, therefore, the defendant has standing to challenge the search warrants used in this matter."

The decision of the United States Supreme Court in *Katz v. United States,* 389 U. S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, makes it clear that capacity to claim the protection of the Fourth Amendment of the United States Constitution depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion. (There is a veiled statement to this effect in *State v. Sumner,* supra, at page 804.)

Does the defendant in the instant case have a reasonable expectation of privacy in "Room B" which is a part of the administrative offices of Lakeview Village, Inc.?

Language from *Mancusi v. DeForte,* 392 U. S. 364, 20 L. Ed. 2d 1154, 88 S. Ct. 2120, which the majority opinion quotes, suggests that the defendant herein does not have a reasonable expectation of privacy in "Room B." There the United States Supreme Court said:

". . . In such a 'private' office, DeForte would have been entitled to expect that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission *or that of his union superiors.* . . . It is, of course, irrelevant that the Union or some of its officials might validly have consented to a search of the area where the records were kept, regardless of DeForte's wishes, for it is not claimed that any such consent was given, *either expressly or by implication."* (pp. 369-370.) (Emphasis added.)

On the facts in the instant case it must be presumed that the employer consented to the search. This is inferred from the fact that the employer initiated the search.

Another case directly in point is *State v. Zuehlke,* 239 Wis. 111, 300 N. W. 746 (1941). There the defendant was charged with arson and the police went to the office of the department of agriculture where the defendant worked. The police asked for and received the permission of the defendant's superior before searching the defendant's desk. Memoranda regarding experiments as to the

length of time a candle would burn and details of the plans that the defendant had in mind were obtained. The Wisconsin Supreme Court upheld the search and said:

". . . His desk was property over which he could not exercise private control. This was not his castle nor was the possession of those papers at the time of their taking in any way connected with his person. . . . He had no special property or possessory rights in the desk he was using and in no sense of these particular guarantees of the constitution could his rights be said to be invaded. . . ." (p. 117.)

Research has disclosed a number of related cases which uphold a warrantless search of an employee's locker where the employer gave consent to the search. In *United States v. Bunkers*, 521 F. 2d 1217 (9th Cir. 1975), *cert. denied*, 423 U. S. 989, 46 L. Ed. 2d 307, 96 S. Ct. 400, the court held a warrantless search of a government owned locker which was furnished to the employee incident to her employment and which was subject to search by postal inspectors and supervisors was not unreasonable. There the court recognized that the defendant "exhibited an actual (subjective) expectation of privacy" by placing stolen C. O. D. parcels in the locker. *The court, however, refused to believe society was prepared to recognize the defendant's use of the government supplied employment-connected locker to hold in privacy the stolen C. O. D. parcels as reasonable.*

If this court were to review the defendant's self-serving affidavit in the instant case, it also demonstrates *a subjective* expectation of privacy by the defendant herein.

In *Bunkers* the postal manual made the lockers furnished to postal employees subject to search by supervisors and postal inspectors. A further ground for the holding in *Bunkers* was the defendant's labor union's agreement which permitted search of the government owned locker assigned to the defendant upon reasonable suspicion of criminal activity. This was said to be an effective relinquishment of the employee's Fourth Amendment immunity in her work-connected use of the locker.

In *Shaffer v. Field*, 339 F. Supp. 997 (C. D. Cal. 1972), *aff'd*, 484 F. 2d 1196 (9th Cir. 1973), a search of a deputy sheriff's locker was conducted, where the commander kept the master key and combinations to all locks. On at least three prior occasions deputies' lockers had been searched by commanders without permission. There the defendant, a former deputy sheriff charged with murder, was held not to have had a constitutionally justifiable

expectation of privacy in his locker, and a warrantless and an unconsented to search of his locker was held not to violate his right to privacy.

In *United States v. Speights,* 413 F. Supp. 1221 (D. N. J. 1976), it was held that a police officer did not have a constitutionally justified expectation of privacy with respect to a locker in police headquarters, which was owned by the police department and was made available primarily for storage of police equipment, and to which there was a master key available to superior officers (although the defendant's locker had a private padlock on it). There the government did not challenge the defendant's contention that he personally believed that the contents of his locker would remain private. The court noted in cases of this nature defendants inevitably believe that the area where the seizure occurred was beyond the intrusion of a search. On this point the court said, *the issue presented is not whether the defendant personally felt that his locker would not be searched, rather the court was called upon to decide whether the defendant's expectation of privacy as to the locker was constitutionally justified. Katz v. United States,* supra, was cited as applying an objective standard in making this determination. *An expectation of privacy was said to be justified if society is prepared to recognize it as reasonable.*

Our own decision in *State v. Stein,* 203 Kan. 638, 456 P. 2d 1, *cert. denied,* 397 U. S. 947, 25 L. Ed. 2d 128, 90 S. Ct. 966, held a school locker assigned to a student, and over which the high school principal had custody, control and access by possessing a master list of all lock combinations and a key which would open every locker, was subject to search for contraband upon request of law enforcement officers without a warrant for the search.

A further Kansas case bearing on the point here in controversy is *State v. Jakeway,* 221 Kan. 142, 558 P. 2d 113.

*United States v. Blok,* 188 F. 2d 1019 (D. C. Cir. 1951), *purports* to support the court's decision as to "Room B." It holds that a search of an employee's desk (assigned to the employee's exclusive use) by police officers without a warrant and without the employee's consent, but with the consent of the employee's superiors, was an unreasonable search and an invasion of the employee's constitutional right to privacy. It held evidence secured by such search could

not be admitted in prosecution against the employee. In the opinion, however, the court said:

".  .  . No doubt a search of it without her consent would have been reasonable if made by some people in some circumstances. Her official superiors might reasonably have searched the desk for official property needed for official use.  .  .  ." (p. 1021.)

The Federal District Court in *Shaffer v. Field,* supra, at page 1002 said *Blok* seems to suggest that "if the defendant had been charged with a misdemeanor *arising out of misconduct in connection with her employment,* her superiors would have been justified in authorizing a search of the desk assigned to her." (Emphasis added.) This is analogous to the facts presented in the instant case, thus distinguishing *Blok.*

On the facts in this case *the administrative offices of Lakeview Village, Inc.,* had two main internal divisions to the offices. The larger area designated "Room A" was, during October 1974, a general office facility, undivided, and containing several secretarial and sales personnel desks, with no private offices. During the same period of time, "Room B," a slightly smaller area, was also an office facility which contained a conference table, the defendant's private desk, credenza and file cabinet. *During October 1974, there was normally no restriction during regular business hours on the ingress or egress between Rooms A and B among any administrative employees at Lakeview Village.* However, on occasion, the defendant could impose certain restrictions on the flow of traffic into and out of Room B, *during his presence,* but the defendant was not present when the search here was conducted. These facts, in my opinion, do not give the defendant standing to challenge the search of the corporate premises of Lakeview Village, including the private desk, credenza and file cabinet in Room B, for the purpose of seizing evidence to prove that the defendant embezzled money from his employer.

In my opinion, applying *the objective standard* to determine whether the defendant herein had a reasonable expectation of privacy *in the facilities supplied to him by his employer in "Room B" to conduct the business affairs of Lakeview Village, Inc.,* the search was constitutionally justified without a warrant. The area wherein the seizure of evidence occurred was not beyond the in-

trusion of a search *initiated by his employer*. In my opinion, society is not prepared to recognize the expectation of privacy, on the facts in this case, as reasonable.

It is respectfully submitted the judgment of the trial court should be reversed *in toto*.

FATZER, C. J., and FROMME, J., join in the foregoing dissenting opinion.