No. 65,046

STATE OF KANSAS, *Appellee,* v. JERRY E. DYE, *Appellant.*

(826 P.2d 500)

Opinion filed February 5, 1992.

*Steven R. Zinn,* deputy appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*James K. Craig,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Jerry Dye appealed his convictions by a jury of one count each of possession of cocaine, K.S.A. 1991 Supp. 65-4127a, possession of marijuana, K.S.A. 1991 Supp. 65-

4127b(a)(3), and possession of drug paraphernalia, K.S.A. 65-4152. The Court of Appeals found error in the admission of statements made by Dye and evidence found on him and reversed his convictions. We granted the State's petition for review.

Dye raises three issues in this appeal. He states that the "primary issue . . . is the validity of [the] search warrant." The other issues raised are a defect in the drug paraphernalia count of the complaint and counsel's not being allowed to withdraw when he anticipated that he might become a witness.

In the Court of Appeals, the State conceded that the complaint was defective and that the conviction for the possession of drug paraphernalia should be overturned as a result. The Court of Appeals did not reach the third issue relating to defense counsel's motion to withdraw.

The Court of Appeals found reversible error with regard to the admission of evidence, but not on the ground urged by Dye. Dye argued that the warrant was deficient in not naming him or specifically identifying his apartment. The Court of Appeals found error in the admission of money, cocaine, and statements taken from Dye and made by him at the time the search warrant was being executed. The conviction for possession of cocaine was reversed because it was based solely on the cocaine found on Dye and his statement that it was cocaine. As to the conviction for possession of marijuana, the court said:

"Although it is a closer question whether, without the evidence and statements resulting from Dye's search, the jury would have found Dye guilty of possession of marijuana, we are not prepared to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the verdict on the possession of marijuana charge. We must reverse."

On the suppression issue raised at trial, the lack of specific identification of Dye's apartment, the parties agree on the following facts: Officer Blundell testified that there were two apartments and "another thing" which possibly could be considered an apartment at the rear of the Shorthorn Tavern building. The owner of the tavern testified that the building had two apartments plus a middle area which was used for storage. He also testified that at the time the search warrant was executed only Mr. Dye's apartment was occupied.

Blundell testified that he knew, and had known for four or five years, which apartment Dye lived in. Blundell variously indicated that the apartment was referred to as "apartment 2" and as the "back apartment." The City of Chetopa's utility records indicated that Dye lived in the "middle apartment at 102 North Sixth." There were no apartment designations posted on the premises.

Blundell testified that he had known Dye for 20 years. He had seen Dye going in and out of the apartment many times over a period of several years. Blundell was the affiant, he was one of the officers who searched Dye's apartment, and he informed the other officers which apartment was to be searched, although they also knew which apartment Dye occupied.

In the present case, the place to be searched was described in the warrant as "[t]he residence of 102 N. 6th Street in Chetopa, KS, an apartment in the rear of the Shorthorn Tavern." The description of the premises in the affidavit was as follows: "In the past two months, two purchases of marijuana have been made on Fridays from Jerry Dye at his residence, an apartment located at 102 N. 6th, in Chetopa Kansas."

The issue which was focused on in the district court and by the parties in their briefs in the Court of Appeals was whether the lack of specificity in identifying Dye's apartment in the warrant invalidated the search. Dye argued that the evidence should have been suppressed because the officers knew of the multiunit character of the structure, but failed to conduct an investigation to obtain the specific designation of his apartment.

The State argued that any irregularity in the warrant was merely technical because Officer Blundell, the affiant and one of the executing officers, knew with certainty which apartment was occupied by Dye. The State also argued that, because there was no number on the apartment door and it was known by various designations, using an apartment number in the warrant would not have improved the specificity of the description. Furthermore, because Dye's apartment was the only one in which someone was living, the lack of specificity did not provide a "roving commission" for the police.

In *State v. Gordon*, 221 Kan. 253, 258, 559 P.2d 312 (1977), we found that "[i]t is constitutionally required that a search warrant shall 'particularly' describe the place to be searched." We

held: "A search warrant directed against a multiple occupancy structure generally will be held invalid if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units." 221 Kan. 253, Syl. ¶ 7.

We noted that a few courts had carved out exceptions to the rule that a search warrant lacking sufficient definiteness as to a subunit will be held invalid. With regard to these exceptions, this court found that "none of them, even if recognized, is applicable" in the circumstances of *Gordon.* 221 Kan. at 259.

Following the general rule as stated in *Gordon,* the Court of Appeals found the search warrant deficient but an exception to the rule was said to save the warrant in this case. It "provides that a slight 'deficiency in the warrant may be cured by a proper description in the supporting affidavit, although it is usually required that the affidavit be annexed or attached to the warrant.' 221 Kan. at 259." The Court of Appeals reasoned that the deficiency in the warrant is cured by the more specific description in the affidavit, even though there is nothing in the record to show that the affidavit was attached to the warrant, because the affiant also was an executing officer.

The Court of Appeals did not discuss or elaborate on its conclusion that the affidavit cured the defective description in the search warrant. The only additional fact relative to the description of the place to be searched was that it was the defendant's apartment. In *Thomas v. State,* 50 Md. App. 286, 437 A.2d 678 (1981), a similar question was before the court. There as here, the search warrant gave the correct street address of the apartment building but did not specify the apartment to be searched except that it was the defendant's apartment. The court upheld the validity of the search warrant, stating:

"The officers knew which building to enter because of the notation on the front of the search warrant. They knew which apartment to search because of the information in the attached affidavit in support of the warrant. This affidavit does not state the number of the apartment to be searched, but it adequately identifies the apartment by providing the name of the resident, Randolph Thomas, the appellant." 50 Md. App. at 293.

In *State v. Kyles,* 513 So. 2d 265 (La. 1987), both the affidavit and the search warrant gave the correct street number of the

defendant's residence but did not indicate that there was more than one apartment at that address. The informant pointed out which apartment was the defendant's, and the officers waited until the defendant exited the apartment before they executed the search warrant. The court said: "Under these circumstances, there was little probability that the wrong place would be searched, and there was no violation of the particularity requirement." 513 So. 2d at 270.

In *United States v. Clement*, 747 F.2d 460 (8th Cir. 1984), the search warrant described the premises to be searched as " 'apartment of Vance Clements, No. 4 at 3300 Irvine Avenue.' " 747 F.2d at 461. The officers executing the warrant searched Apartment No. 3, which was the defendant's apartment. The court upheld the search warrant, stating:

"The test for determining the sufficiency of a warrant description is 'whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.' *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir.), *cert. denied* 444 U.S. 871, 100 S. Ct. 148, 62 L. Ed. 2d 96 (1979). Among the factors we have relied upon in upholding searches conducted under the authority of a warrant inaccurately describing the place to be searched are: (1) whether the address in the warrant, although incorrect, still describes the same piece of property; (2) whether the premises intended to be searched are adjacent to those described and are all under the control of the defendant; and (3) whether other parts of the description which are correct limit the place to be searched to one place. *Id.* Of particular importance in *Gitcho* was the fact that the agents personally knew which premises were intended to be searched. *Id.* at 372.

"In the instant case, the search warrant named the correct street number. Officer Doyle testified that he had been to the apartment building several times before and knew where Clement's apartment was located. In fact, the day before the warrant was issued, Officer Doyle had talked with Grotberg and Clement separately in their respective apartments. Clement's apartment was adjacent to Grotberg's, and the warrant specifically named his residence. When the officers arrived to execute the warrant, they immediately went to Clement's apartment. Under these facts, there was no probability of a mistaken search, and we cannot conclude that the inaccurate address in the warrant should operate to invalidate the search." 747 F.2d at 461.

In *State v. DeLaurier*, 533 A.2d 1167 (R.I. 1987), the Supreme Court of Rhode Island noted that a description is adequate if the officer executing the search warrant can with reasonable effort

ascertain the place to searched with certainty. The court held that the description of defendant's home in the warrant was specific enough to indicate to officers the proper scope of their search, where the warrant cited the proper address, referred to the home as a duplex, and authorized officers to search and seize at the home of defendant. 533 A.2d at 1171.

In the present case, we agree that the search warrant was not fatally defective when it is read together with the affidavit. The Court of Appeals went a step beyond our discussion in *Gordon* and said that this court "recognized three exceptions to the general rule." The one said to apply in the present case is "where the deficiency in the warrant may be cured by a proper description in the supporting affidavit, although it is usually required that the affidavit be annexed or attached to the warrant." 221 Kan. at 259.

It is indicated in cases applying this exception that the usual requirement that the affidavit be attached to the warrant is practical rather than technical. If the executing officers actually have more information pinpointing the location to be searched than appears on the face of the warrant, a search of other units may be avoided. As one court phrased it, "[i]f the affidavit required for the issuance of the warrant is attached to the warrant and incorporated therein by reference, it can be used by the officer to identify the place intended." *United States v. Moore*, 263 A.2d 652, 653 (D.C. 1970).

Colorado courts have had occasion to consider whether information in the affidavit satisfies the warrant particularity requirement. One case involved circumstances very similar to the present one. The Colorado Court of Appeals used the following rationale for upholding the trial court's refusal to suppress evidence seized pursuant to a search warrant which listed only a street address, although "there were at least two apartments at the location":

"Ordinarily a search warrant for a multi-unit structure which does not specify a particular subunit is constitutionally defective. [Citation omitted.] However, here the affidavit for the warrant specified that only the single apartment located in the upstairs portion of the building was that for which the warrant was desired. The warrant was thereafter executed by the officer who procured its issuance. Thus, since the affidavit contains sufficiently specific information to uphold issuance, evidence obtained in the resulting search need not be suppressed simply because the warrant contains only a

general description of the place to be searched. [Citations omitted.]" *People v. Salazar*, 39 Colo. App. 409, 410-11, 568 P.2d 101 (1977).

In a subsequent case the Colorado Court of Appeals squarely faced the question whether a deficiency in the warrant could be cured by an *unattached* affidavit, and the court answered that it could be. *People v. Papez*, 652 P.2d 619 (Colo. App. 1982). The alleged deficiency was a lack of specificity in the items to be searched for rather than the location, but the court treated the constitutional particularity requirement as equally applicable to each and employed the same reasoning for each.

The affidavit contained "sufficiently specific information to satisfy any constitutional particularity requirement." 652 P.2d at 622. The warrant referred to property stolen from an office in general terms. Because the affiant and the executing officer were the same person, "there was no occasion for concern that the officer would be misled by the description in the warrant." 652 P.2d at 622.

The court stated that there was no statutory or constitutional requirement that the affidavit be attached to the warrant, and concluded:

"Under the circumstances of this case, it would be putting form over substance to apply the exclusionary rule merely because the officer executing the warrant may not have had a copy of the affidavit in his possession when he searched the home or because a copy of the affidavit may not have been furnished to, or attached to, the copy of the warrant given the person whose home was searched. This we decline to do." 652 P.2d at 622.

In *U.S. v. Gahagan*, 865 F.2d 1490 (6th Cir. 1989), the challenge to the search warrant was that the description was defective in that it did not particularly describe the place to be searched. The warrant gave only a street address. The supporting affidavit gave a complete address. Since the description in the affidavit was sufficient, the court found it cured the defect in the warrant, notwithstanding that the affidavit was not attached to the search warrant. The court noted it was in the officer's vehicle and accessible to the officer at the time of the search. The court said:

"Against the backdrop of the cited case law, we find that the description of the property to be searched contained in the affidavit, as well as the relevant information known by the executing officer in this case, can be relied upon to validate a warrant if the description contained in the warrant

itself is less than complete. Here, there is no dispute that probable cause existed to search 7609 Douglas Lake Road, the place listed in the warrant. Further, there is no dispute that the officer knew that the search was for Cabin #3 and House B. The officers supplied the court with the description contained in the affidavit and therefore could reasonably ascertain both Cabin #3 and House B.

. . . .

"Consequently, we find that when one of the executing officers is the affiant who describes the property to the judge, and the judge finds probable cause to search the property as described by the affiant, and the search is confined to the areas which the affiant described, then the search, in this case, is in compliance with the fourth amendment." 865 F.2d at 1498-99.

In the recent case of *State v. LeFort*, 248 Kan. 332, 806 P.2d 986 (1991), we relied on *Gahagan* in determining a similar challenge in favor of the State. In *LeFort*, the officer prepared the application and affidavit, which was part of a multi-sheet form. The carbon inserts were not long enough, and the complete description of the residence did not copy onto the search warrant. The officer who executed the affidavit participated in the search. We upheld the validity of the search warrant, stating:

"In determining whether the description given the executing officer in the warrant was sufficient, the initial examination is directed to the description stated in the warrant. However, if the description in the warrant is inadequate due to technical irregularity, the focus then shifts to the description contained in the application or affidavit for the warrant if the officers were able to use that description to execute the search warrant. When the officer executing the search warrant is the affiant who described the property to be searched, and the judge finds there was probable cause to search the property described by the affiant and the search is confined to the area which the affiant described in the affidavit, the search does not affect the substantial rights of the accused and is in compliance with the Fourth Amendment of the Constitution of the United States and Section Fifteen of the Kansas Bill of Rights.

"The fact that the complete address of the particular place to be searched failed to be copied through the carbon in the warrant was a mere oversight, a technical irregularity, which did not prejudice the defendant." 248 Kan. at 341.

Although in the present case lack of a sufficient description in the search warrant was not due to a "mere oversight," the effect was the same. There is no indication in *LeFort* that the affidavit was attached to or accessible to the officers. As in *LeFort*, the executing officer was the affiant, the issuing judge found probable

cause to search the defendant's residence, and the search was confined to that residence.

There were two apartments at 102 N. 6th Street in the rear of the Shorthorn Tavern building. One was occupied by Dye and had been for several years; the other was unoccupied. The warrant does not specify whether the targeted apartment was occupied, but the affidavit refers repeatedly to Dye and his "residence." Thus, the information in the affidavit was sufficient to preclude intrusion into the other, unoccupied apartment.

Because the affiant, Blundell, also participated in the execution of the search warrant, the information which precluded a search of the other apartment was available at the scene of the search whether or not the affidavit was attached to the warrant. He knew with certainty which unit Dye lived in, he directed the other officers to the correct unit, and his direction was superfluous in that the other officers were familiar with which unit was involved. It was clear, therefore, to all the officers that the warrant did not authorize a search of the other, unoccupied apartment but rather was limited to the premises occupied by Dye.

This court has stated the purpose of the particularity requirement as being "to prevent general searches and to prevent the seizure of an item at the discretion of the officer. *Stanford v. Texas*, 379 U.S. 476, 13 L. Ed. 2d 431, 85 S. Ct. 506." *State v. Ames*, 222 Kan. 88, 92, 563 P.2d 1034 (1977). The test is for "practical accuracy," and common sense should prevail over hypertechnicality. 222 Kan. at 92. We conclude the search warrant was not fatally defective when it is read together with the affidavit and one of the officers executing the search warrant is the affiant.

The Court of Appeals, however, did not invalidate the warrant for lack of specific identification of the location. Instead, it found a fatal deficiency in the warrant in the failure to state Dye's name. The warrant directed the search against "[a]ny . . . persons on the property." The Court of Appeals examined the facts set forth in the affidavit and concluded that they were insufficient to justify searching all persons present in the apartment.

It appears that the Court of Appeals believed that the authority for searching Dye depended on the search warrant. In the opinion it is stated that "[a]fter entering Dye's apartment, police searched

Dye and found money and a plastic bag with cocaine and a vial. Dye was arrested and made incriminating statements to police."

In its petition for review the State asserts that the Court of Appeals incorrectly interpreted the facts and should have remanded the case for a factual determination as to the timing and circumstances of the arrest. The necessary factual determination can be made without remanding. In its petition for review the State quoted testimony from the suppression hearing; it has not been controverted by Dye. That testimony establishes that the search of the apartment was underway and that marijuana plants had been found before Dye was placed under arrest. After he was arrested, the search of Dye yielded money and cocaine, and he made incriminating statements to the police. The State argues that the search was incident to a valid arrest and that this issue was never briefed or argued by counsel.

Dye filed a response to the State's petition for review. He asserted that the issue had been briefed and argued. He evidently relied on a few fleeting references to his name not being on the warrant, which actually were made in the context of the identification of the apartment. Nevertheless, Dye did not contest the State's assertion that he was arrested and searched after marijuana was found in his apartment. Dye also argues that his expectation of privacy was violated irrespective of the timing of the search. He relies on *State v. Lambert*, 238 Kan. 444, 710 P.2d 693 (1985), and *State v. Horn*, 15 Kan. App. 2d 365, 808 P.2d 438, *rev. denied* 248 Kan. 998 (1991).

The Court of Appeals, believing that the warrant governed the arrest, analyzed case law on warrants authorizing the search of all persons present on the premises to be searched. The Court of Appeals relied on *Lambert, State v. Platten*, 225 Kan. 764, 594 P.2d 201 (1979), and cases from other jurisdictions.

In *Lambert*, this court considered the search of a nonresident during the execution of a warrant which authorized the search of an apartment and its occupant. The nonresident was seated at the kitchen table when police entered the apartment. There was marijuana on the table. The nonresident was placed under arrest for possession of marijuana, and her purse was searched. She was prosecuted on the basis of methamphetamine found in her purse. This court concluded that the trial court correctly determined

that the evidence must be suppressed pursuant to *Ybarra v. Illinois*, 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979).

There is no discussion in *Lambert* of a search incident to a valid arrest. In all likelihood, the State did not make this argument because the nonresident's being seated at a table on which there was some marijuana would be a shaky foundation for an arrest for possession of the substance. This court did observe:

"Under proper circumstances the police may search a nonresident visitor or his belongings in the course of executing a warrant for a premises search. These circumstances include: where the individual consents to being searched, where the item is in plain view on the person or in his possession, *where there has been a valid arrest* and where there is probable cause to search plus exigent circumstances." (Emphasis added.) 238 Kan. at 450.

*Lambert* is of little use here because Dye's arrest was not made pursuant to the warrant. Although one may reasonably assume that, if the police may search a nonresident visitor where there has been a valid arrest, they may search the occupant of the premises who has been validly arrested. Hence, a determination that the arrest of Dye was valid based upon the discovery of marijuana in his apartment would affirmatively answer the question whether the search of his person was constitutionally permissible.

In *Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963), police officers went to George Ker's apartment without a warrant in order to arrest *him* for drug activities. Police knew that he was using the apartment for narcotics transactions. His wife, Diane Ker, emerged from the kitchen when the police entered with a pass key. In plain view in the kitchen was a brick-shaped package of marijuana on a scale. The Supreme Court ruled that the discovery of the marijuana in plain view was sufficient ground for a reasonable belief that Diane was committing in the presence of the officers the offense of possession of marijuana. Thus, there was probable cause to arrest her once the marijuana had been discovered, even though there had not been probable cause to arrest her at the time the officers entered the apartment.

This court embraces the general rule that an officer does not need a warrant to make an arrest if he or she has reasonable cause to suspect that an offense has been committed. *State v.*

*Peterson,* 236 Kan. 821, 826, 696 P.2d 387 (1985). An arrest which takes place within a suspect's own home, however, is subjected to somewhat closer scrutiny than one which occurs elsewhere, at least in some circumstances. In *State v. Platten,* it was stated that "[t]he Fourth Amendment and Section 15 of the Kansas Constitution Bill of Rights require an arrest warrant based upon probable cause to validly arrest a person within his own home unless exigent circumstances exist." 225 Kan. 764, Syl. ¶ 5. Arrest in one's own home was contrasted with arrest in a public place, where a warrant is not necessary as long as there is probable cause.

Platten's home was forcibly entered *for the purpose of arresting him without a warrant,* and it seems that that factor weighed heavily in this court's decision. Emphasis was placed on the "unique sensitivity" to which one's reasonable expectation of privacy in the home is entitled, and Justice Stewart's opinion in *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), was quoted for the proposition that *warrantless entry* of a person's house *in order to arrest him* is in fundamental conflict with the protections of the Fourth Amendment. 225 Kan. at 768-69.

This case is distinguishable from *Platten* on the ground that the initial entry into Dye's apartment was lawful and was not for the purpose of arresting him without a warrant. This case is more analogous to *Ker v. California* than to *Coolidge v. New Hampshire.*

The validity of the arrest of Dye would be, as in *Ker,* whether there was probable cause to support the arrest. Did discovery of the marijuana plants in Dye's apartment during the execution of a search warrant for drugs supply probable cause to arrest him? We believe it did.

K.S.A. 22-2401 provides in pertinent part:

"A law enforcement officer may arrest a person under any of the following circumstances:

. . . .

"(c) The officer has probable cause to believe that the person is committing or has committed:

"(1) A felony; or

"(2) a misdemeanor, and the law enforcement officer has probable cause to believe that:

"(A) The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested.

. . . .

"(d) Any crime, except a traffic infraction, has been or is being committed by the person in the officer's view."

In *State v. Peterson*, the term "probable cause" in the statute is defined as "refer[ing] to that quantum of evidence which would lead a prudent man to believe that an offense has been committed." 236 Kan. at 826. It also was said that the "correct test is whether a warrant if sought could have been obtained by the arresting officer." 236 Kan. at 827. There is little doubt that a judicial officer presented with the facts set forth in the affidavit concerning Dye's transporting, receiving, packaging, and selling marijuana plus the discovery of marijuana plants in Dye's apartment would not have issued a warrant for his arrest for violation of K.S.A. 1991 Supp. 65-4127b(a)(3), possession of a controlled substance.

Because violation of 65-4127b(a)(3) can be either a felony or a misdemeanor, several subsections of the statute governing warrantless arrest need to be consulted. The arrest would be valid under any of the statutory subsections quoted earlier.

The arrest being valid, we next consider whether the search of Dye's person was lawful. It is entirely reasonable for an arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. *Chimel v. California*, 395 U.S. 752, 763, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). This court has stated that it is not only the officer's right, but also a duty as an incident to the arrest, to search the person arrested and seize incriminating items. *State v. Little*, 201 Kan. 94, 96, 439 P.2d 387 (1968). Thus, if the arrest was constitutionally permissible, the search incident to it was permissible as well.

The Court of Appeals ruled that Dye's statement identifying the white powder which was found on him as cocaine, as well as the cocaine and money found on him, should have been suppressed. The opinion contains no separate analysis of the admissibility of the incriminating statement.

In the district court, Dye filed a motion to suppress the statement made at the time of the search and a statement made to

another officer a few days later. The grounds for the suppression were that he requested an attorney, was not taken before a magistrate in a timely manner, and was not advised of his constitutional rights. The motion was overruled by the district court and not renewed when Dye appealed his convictions to the Court of Appeals.

Thus, since the arrest of Dye was valid, there is no issue before this court as to the admissibility of Dye's statements.

The final issue is whether the district court erred in refusing to allow defense counsel to withdraw in order to testify that there was a discrepancy between his count and a police officer's count of money seized from Dye. This issue was not considered by the Court of Appeals. Dye argued that counsel should have been permitted to withdraw during trial when Officer Blundell testified that the bag of money found on Dye contained $1,020.60. Defense counsel, at the time of the preliminary hearing, had counted $1,260.60. Dye contends that this discrepancy is material in that it "had a direct bearing on both the officers' credibility and the chain of custody over the evidence which was seized."

The State contends that its witnesses consistently testified that $1,020.60 ·was recovered from Dye and that the bag contained that amount at the preliminary hearing and at trial. If there were a basis for casting doubt on the officers' credibility and the chain of custody, defense counsel should have raised the issue at the preliminary hearing.

The sheriff testified at the preliminary hearing that he had received $1,020.60 from Officer Blundell and kept it in his custody. Defense counsel asked him whether it was a "crime to possess $1,260.00 in currency." The State asserts that this reference to a different amount is "the last word that is in the record pertaining to the issue until the trial."

On the eve of trial defense counsel filed a motion to withdraw. He listed five reasons for withdrawing, but did not mention the amount of money or include the possibility that he would be a witness. Before trial began, the motion was taken up on the record. The amount of money and the possibility that he would be a witness were not mentioned.

It seems as if any significant factor which might weigh in favor of withdrawal, especially a factor unrelated to the adequacy of

representation, would have been raised in the motion and when the motion was argued. When defense counsel suggested at the end of the first day of trial that $240 was missing, the district court stated:

"Well, the other conclusion logically to be drawn is that if we believe what you say—and I'm not saying you're misleading us—but if we were to believe what you say, the only conclusion that can be drawn is that the Sheriff put over $200 in the bag at the preliminary hearing, then took it out after the preliminary hearing."

Defense counsel argued that the sheriff tampered with the money to correct the inconsistency talked about at the preliminary hearing.

It does not appear that there is any significance to the amount of money or to the contention that defense counsel might have been a witness on the subject. The matter was never treated as a reason for withdrawal until mid-trial, even though counsel's withdrawal had been the subject of a written motion and argument on the record. The notion that the sheriff added to and then subtracted from the amount makes no sense and does not seem to pertain to the officers' credibility or the integrity of the chain of custody. As the State pointed out, the amount of money was not an issue because this was not a case involving a controlled buy of drugs. What relevance the money had was its tendency to show that Dye had the intent to sell drugs, but he was convicted only of possession of drugs.

The decision to discharge an indigent defendant's counsel and appoint new counsel or permit new counsel to enter an appearance is a matter vested in the sound discretion of the trial court. *Oswald v. State*, 221 Kan. 625, 631, 561 P.2d 838 (1977). The record in the present case shows that Dye's counsel was appointed. In the circumstances of this case, there was no abuse of discretion in the district court's ruling.

Defendant's conviction of possession of drug paraphernalia is reversed; defendant's convictions of possession of cocaine and possession of marijuana are affirmed.

The judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is affirmed in part and reversed in part.