NOT DESIGNATED FOR PUBLICATION

No. 128,043

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEREMIAH JUSTIN CHEZEM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Graham District Court; PRESTON A. PRATT, judge. Submitted without oral argument. Opinion filed December 26, 2025. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., SCHROEDER and HURST, JJ.

PER CURIAM: Jeremiah Justin Chezem timely appeals from his convictions and sentences for possession of marijuana with the intent to distribute, possession of methamphetamine with the intent to distribute, felony possession of drug paraphernalia with the intent to distribute, and two counts of misdemeanor possession of drug paraphernalia. Chezem argues the district court erred in denying his motion to suppress evidence, asserting: (1) The warrant authorizing the search of his home was defective for stating the wrong address; (2) the affidavit in support of the warrant failed to establish

1

probable cause; and (3) the officers who executed the warrant could not rely on it in good faith. We disagree.

After careful review, we find the failure to state the correct address on the search warrant was a reasonable mistake of fact and there is no reasonable probability it could have resulted in officers searching a house other than Chezem's. Additionally, the affidavit in support of the search warrant provided a substantial basis for the issuing judge to find probable cause. Because we observe no defect in the search warrant, we need not address whether the search was still lawful under the good-faith exception. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2022, Chezem was pulled over while driving from Colorado to Kansas. During the stop, officers found 3-1/2 ounces of methamphetamine and some scales. By agreement, Chezem was not immediately charged for this offense and became known to officers. Chezem was expected to remain law abiding, but this arrangement did not go well.

During this time, law enforcement received reports that Chezem continued to traffic drugs in and around Colby, Kansas. Chezem was arrested on drug-related charges in Colorado in April 2023. The Colby County Sheriff's Office learned Chezem left Colorado on July 3, 2023. On July 4, 2023, the Colby County Sheriff was on patrol monitoring a severe weather situation. He learned officers had stopped Drew Wolf earlier that day, shortly after Wolf left Chezem's home in Morland, Kansas. During the stop, officers observed Wolf attempt to hide a glass pipe with what appeared to be methamphetamine residue. Wolf informed officers he had gone to pick up methamphetamine from Chezem that he already paid for, but no one answered the door when he knocked. Wolf saw Chezem's vehicle was parked outside the house.

2

The Sheriff returned to his office and prepared a warrant and supporting affidavit to search Chezem's home. The district court signed the warrant, and officers searched Chezem's home. Inside the home, officers found various drug paraphernalia and large quantities of marijuana and methamphetamine, as well as a jar containing THC wax.

Chezem was charged with distribution of more than 100 grams of methamphetamine, a severity level 1 drug felony; distribution of between 25 and 450 grams of marijuana; possession of drug paraphernalia with intent to distribute; and two counts of misdemeanor possession of drug paraphernalia. Prior to trial, Chezem filed a motion to quash the search warrant and suppress all evidence obtained in the search. He argued the search warrant was invalid because it provided an incorrect address—specifically, the search warrant indicated the address as 2xx E. Summer Avenue in Morland, although Chezem's address was 3xx E. Summer Avenue. He further complained the affidavit incorrectly stated his house was yellow rather than tan. The district court held an evidentiary hearing on the motion.

The Sheriff explained he determined the address was 2xx E. Summer Avenue by looking it up in the 911 database. Ordinarily, he would have obtained the address from the county assessor's office; however, the office was closed for the July Fourth holiday. The Sheriff was familiar with Chezem and had been to his house on prior occasions. The district court denied Chezem's motion, finding the warrant was not deficient and, even if it was, the good-faith exception applied.

The case proceeded to trial, and Chezem raised timely objections to the evidence derived from the search of his house to preserve the issue for appeal. Chezem's jury convicted him of all charges. The district court sentenced Chezem to 250 months' imprisonment for his felony convictions and concurrent 6-month jail sentences for the two misdemeanor convictions. Additional facts are set forth as necessary.

DISCUSSION

Chezem asserts the district court erred in denying his motion to suppress evidence. Ultimately, his arguments all relate to the constitutionality of the search of his home; thus, the same overarching legal framework guides our review.

*Standard of Review and Applicable Legal Principles*

In reviewing a district court's denial of a motion to suppress evidence, we review the district court's findings of fact to determine whether they are supported by substantial competent evidence. We review the district court's ultimate legal conclusion de novo. *State v. Garrett*, 319 Kan. 465, 469, 555 P.3d 1116 (2024).

"The Fourth Amendment [to the United States Constitution] prohibits unreasonable searches and seizures, and warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement." *State v. Crudo*, 318 Kan. 32, 35, 541 P.3d 67 (2024). The judicially created "exclusionary rule" is "designed to deter unlawful searches and seizures by prohibiting the prosecution's use of unconstitutionally obtained evidence." *State v. Perkins*, 310 Kan. 764, 767, 449 P.3d 756 (2019). However, this rule applies only when it would act as a deterrent. See *Utah v. Strieff*, 579 U.S. 232, 243, 136 S. Ct. 2056, 195 L. Ed. 2d 400 (2016); *State v. Tatro*, 310 Kan. 263, 265, 445 P.3d 173 (2019) (exclusionary rule "applies only when it furthers the rule's purpose").

When, as occurred here, a search is authorized by a warrant, we interpret the warrant "'in a common sense, rather than a hypertechnical,'" manner. *State v. Hillard*, 315 Kan. 732, 767, 511 P.3d 883 (2022). This is because:

4

"When deciding whether an affidavit supplies probable cause, a judge 'considers the totality of the circumstances presented and makes "a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place."'" 315 Kan. at 747.

With this framework in mind, we turn to Chezem's arguments.

*Analysis*

*An Incorrect Address Specified in the Search Warrant Did Not Render the Search Unlawful*

Chezem first argues the search warrant was invalid because it listed an incorrect address. Specifically, the warrant listed 2xx E. Summer Avenue as the address to be searched when, in fact, the officers searched his home at 3xx E. Summer Avenue. Chezem asserts this rendered the entirety of the search invalid because, by listing an incorrect address, the warrant failed to specify with particularity the place to be searched and the items to be searched and seized therein. He further complains the affidavit in support of the warrant incorrectly identified his house as yellow in color, as opposed to tan.

The Fourth Amendment requires a search warrant to set forth with "[particularity] describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

"'The test for determining the sufficiency of a warrant description is "whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any

reasonable probability that another premise might be mistakenly searched."'" *State v. Dye*, 250 Kan. 287, 291, 826 P.2d 500 (1992).

Failure to correctly specify an address may constitute a technical irregularity. See *State v. LeFort*, 248 Kan. 332, 341, 806 P.2d 986 (1991). "In Kansas, the test used to evaluate search warrant technical irregularities is one of practical accuracy rather than one of hyper technicality." *State v. Campbell*, 317 Kan. 511, 532, 532 P.3d 425 (2023). An error that does not "affect the substance of the warrant . . . constitutes a mere technical irregularity under K.S.A. 22-2511." *Campbell*, 317 Kan. at 533. Warrants are presumed valid. 317 Kan. at 532.

While Chezem relies on several out-of-state authorities in support of his argument, we are persuaded by the State's reliance on *LeFort*, wherein our Supreme Court explained:

> "In determining whether the description given the executing officer in the warrant was sufficient, the initial examination is directed to the description stated in the warrant. However, if the description in the warrant is inadequate due to technical irregularity, the focus then shifts to the description contained in the application or affidavit for the warrant if the officers were able to use that description to execute the search warrant. When the officer executing the search warrant is the affiant who described the property to be searched, and the judge finds there was probable cause to search the property described by the affiant and the search is confined to the area which the affiant described in the affidavit, the search does not affect the substantial rights of the accused and is in compliance with the Fourth Amendment of the Constitution of the United States and Section Fifteen of the Kansas [Constitution] Bill of Rights." 248 Kan. at 341.

Here, the Sheriff was familiar with Chezem's home based on prior contact. He obtained an incorrect address solely due to the emergency services map having not been updated. This is information he would not have used but for the county assessor's office

being closed for the July Fourth holiday. This was not an arbitrary or fabricated address. The State is correct this was, at worst, a reasonable mistake of fact, which does not render the search invalid. See *Heien v. North Carolina*, 574 U.S. 54, 61, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014).

Further, the Sheriff had other officers stationed outside the house who relayed the license plate numbers of the vehicles in the driveway, which were then included in the affidavit. Those vehicles remained in the driveway when the warrant was executed. The information in the affidavit further reflected the identity of the owner of a neighboring property.

Given this information, the incorrect address—although previously the correct address for Chezem's house—as well as whether the house was tan or yellow in color, did not render the warrant invalid. The information contained in the affidavit cured any technical irregularities in the warrant itself. The officers who executed the warrant could readily identify the place to be searched based on the information in the affidavit. There is no reasonable probability the officers would have executed a search at the wrong house. See *Dye*, 250 Kan. at 291; *LeFort*, 248 Kan. at 341.

*The Affidavit in Support of the Search Warrant Provided a Substantial Basis to Establish Probable Cause*

Chezem next argues the affidavit failed to establish a sufficient basis from which the issuing judge could find probable cause. In large part, he asserts the information provided in the affidavit was stale because some of the information referenced activity and contact with law enforcement several months prior to the execution of the warrant. He further argues relying on Wolf's statements to law enforcement was improper as there was no indication Wolf was a reliable informant.

Chezem's argument is problematic because he is essentially asking us to view the information contained in the affidavit in isolation. This is contrary to the requirement that probable cause determinations consider the totality of the circumstances. *Hillard*, 315 Kan. at 747. The Sheriff's prior contact with Chezem was relevant under the totality of the circumstances. Following Chezem's arrest in 2022, Chezem met with the Sheriff and admitted to distributing drugs which he obtained in Colorado. His subsequent arrest in Colorado in April 2023—where Chezem had over two pounds of controlled substances in his possession—provided a reasonable inference he continued to traffic drugs from Colorado. The Sheriff was further aware Chezem left Colorado on July 3, 2023. Thus, when law enforcement stopped Wolf on July 4, 2023, it was reasonable to believe Chezem could have, in fact, returned to his home in Morland with drugs to distribute.

Wolf stated he went to Chezem's home to pick up methamphetamine he had already paid for, but no one answered. He observed Chezem's vehicle parked outside of the house, which law enforcement later confirmed. Wolf had methamphetamine-related drug paraphernalia in his possession at the time of his arrest. And Chezem's neighbor told law enforcement she had seen Chezem return to his house earlier in the day. This additional evidence corroborated Wolf's statements, and it was not unreasonable to rely on them in issuing the warrant. Further, the information about Chezem's prior contact with law enforcement provided meaningful context from which the issuing judge could infer Chezem continued trafficking drugs into Kansas. The fact Wolf went to Chezem's house to pick up methamphetamine and had drug paraphernalia related to methamphetamine use supports the conclusion that evidence of Chezem's ongoing drug trafficking would be found in his home.

We are unpersuaded that there was any deficiency in the information relied on in issuing the warrant. Under the totality of the circumstances, the issuing judge could easily make a "'a practical, common-sense decision'" that drug-related crimes had been or were being committed and there was a fair probability that contraband or evidence of such

crimes would be found in Chezem's home. See 315 Kan. at 747. With this conclusion that the search warrant was validly issued, we find it unnecessary to address whether the good-faith exception applies.

*Chezem's Pro Se Supplemental Brief Was Improperly Filed*

Chezem submitted a pro se supplemental brief, arguing (1) the issuing judge improperly rubberstamped the application for the search warrant, and (2) the Sheriff provided false information to the court. However, Chezem did not file a motion for permission to submit a pro se supplemental brief as required by Supreme Court Rule 5.01(d)(1)(B) (2025 Kan. S. Ct. R. at 31). And given he did not file his pro se supplemental brief until November 13, 2025—days before this matter was set for hearing before us on November 19, 2025—it was long after the time periods provided for filing briefs by an appellant. See Supreme Court Rule 6.01(b) (2025 Kan. S. Ct. R. at 35). We decline to consider the arguments advanced in Chezem's pro se supplemental brief due to his failure to follow the rules for supplemental briefing. Moreover, even if we considered his arguments, they are unpersuasive as they largely rehash the arguments contained in his appellate counsel's brief, with an added layer attacking factual and credibility questions, which we cannot address on appeal. See *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

We affirm the district court's denial of Chezem's motion to suppress. Accordingly, Chezem's convictions and sentences are affirmed.

Affirmed.